IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

THAN MAN,

    Plaintiff,

vs.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

No. CIV S-08-3059-CMK

MEMORANDUM OPINION AND ORDER

Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the court are plaintiff's motion for summary judgment (Doc. 14) and defendant's cross-motion for summary judgment (Doc. 17).

/ / /

/ / /

/ / /

## I. PROCEDURAL HISTORY

Plaintiff initially applied for social security benefits on August 20, 2004. That application was denied and plaintiff re-applied for benefits. Plaintiff claims that disability began on April 16, 2004, and is caused by a combination of: knee, back, and neck pain; an injury to the right shoulder; a head injury; and depression. On re-application, plaintiff's claim was initially denied. Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on October 23, 2007, before Administrative Law Judge ("ALJ") Daniel G. Heely. In a December 27, 2007, decision, the ALJ concluded that plaintiff is not disabled based on the following relevant findings:

1. Plaintiff has the following severe impairments: degenerative disc disease and osteoarthritis;

2. Plaintiff's impairments do not meet or medically equal an impairment set forth in the regulations;

3. Plaintiff has the residual functional capacity to perform light work except that he can only occasionally perform work requiring postural activities of climbing, balancing, stooping, bending, kneeling, crouching, and crawling;

4. Plaintiff cannot perform any of his past relevant work; and

5. Considering plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that he can perform.

After the Appeals Council declined review on October 14, 2008, this appeal followed.

## II. SUMMARY OF THE EVIDENCE

The certified administrative record ("CAR") contains the following evidence, summarized chronologically below:

<u>October 24, 1996</u> – Progress notes prepared by Dr. Howe indicate that plaintiff's ligaments were intact and that he had a full range of motion, though there was some tenderness over the infra-patellar tendon. (CAR 173).

/ / /

| | |
|---|---|
| 1 | <u>October 25, 1996</u> – X-rays of plaintiff's left knee revealed no significant bony, |
| 2 | soft tissue, or articular abnormality. (CAR 183). |

<u>December 5, 1996</u> – Dr. Caton prepared a report following an orthopedic examination of plaintiff's left knee. (CAR 174). Plaintiff complained of "difficulty with the knee with giving way and buckling." Dr. Caton reported that plaintiff's knee had not responded to continued conservative care. On physical examination, the doctor noted pain and tenderness over the medial joint line. McMurray's sign was positive. Neurovascular status was otherwise intact and anteroposterior drawer sign was negative. The doctor reported that x-rays were negative. Dr. Caton believed that an MRI scan was necessary for further evaluation and opined that, if the MRI is positive, plaintiff "is going to require operative arthroscopy."

<u>December 26, 1996</u> – Dr. Goldberg reported on plaintiff's MRI study. (CAR 184). The doctor provided the following impression:

> Probable partial patellar tendon tear versus extensive patellar tendinitis markedly abnormal patellar tendon. Clinical correction with symptoms suggested.

<u>January 9, 1997</u> – Plaintiff was seen by Dr. Caton in a follow-up evaluation. (CAR 174). The doctor reported that the MRI was "grossly abnormal showing significant problems with the knee with a very abnormal thickened patella." Dr. Caton opined that plaintiff was "obviously unable to work" and concluded that plaintiff required surgical intervention.

<u>January 27, 2997</u> – Dr. Caton reported in a progress note that plaintiff had been scheduled for surgery that week, on Friday. (CAR 175).

<u>February 10, 1997</u> – Plaintiff was seen by Dr. Caton for postoperative consultation. (CAR 175). The doctor reported that he is doing "reasonably well" and that the "wounds look good." Dr. Caton noted that "at the time of the surgical procedure, the patient had Grade III chondromalacia of the patella with synovitis and a plica."

/ / /

/ / /

1        <u>July 31, 1998</u> – Plaintiff reported to Dr. Howe complaining of depression.  (CAR 182).  According to the doctor's note, plaintiff's wife had left him two weeks earlier.  Plaintiff reported no suicidal ideation.  The doctor assessed depression and fatigue and prescribed Paxil and ordered lab tests.

      <u>June 16, 2004</u> – X-ray studies of plaintiff's lumbar spine, which were obtained incident to plaintiff's complaints of low back pain, revealed osteoarthritis and spondylolysis at L5, but no significant spondylolisthesis.  (CAR 168).

      X-rays of plaintiff's left knee obtained this same date revealed no effusion, slightly prominent tibial spines, and an otherwise normal study.  (CAR 169).

      <u>February 9, 2006</u> – Plaintiff's niece, Kayla Inthavong, submitted a third-party statement.  (CAR 118-25).  She stated that plaintiff takes care of his two-year-old son, though she adds "My mom and I help him [plaintiff] with everything."  Ms. Inthavong also stated that plaintiff can do his "regular daily routine" without any assistance.  She also stated: "He can walk w/ any type of asst. or cane."  It is unclear whether this means that plaintiff requires an assistive device to walk or does not require use of such a device.  She did indicate later in the statement that plaintiff uses either a cane or wheelchair every day.  At one point she stated that plaintiff can bathe, care for his hair, shave, feed himself, and use the toilet without any assistant, though these things take him a long time and he cannot stand for long period of time.  However, elsewhere in her statement, she stated that plaintiff "needs help with his grooming, such as brushing his teeth, change cloches, and shower."  Ms. Inthavong stated that plaintiff cannot cook any meals for himself and does no house work or yard work.  She also stated that plaintiff can pay his own bills, count change, handle a savings account, and use a checkbook, though he requires assistance to do these things.  She added that plaintiff is unable to engage in any hobbies or activities, stating: "He can't do anything anymore."  Ms. Inthavong stated that plaintiff can walk for about five minutes before requiring a rest break and that plaintiff can pay attention for five to seven minutes at a time.  She added that plaintiff is not able to follow instructions well.  She stated that

plaintiff does not have any problems getting along with authority figures, but that he cannot handle stress or changes in the work routine.

    <u>March 11, 2006</u> – Dr. Castillo submitted an agency examining psychiatrist's report. (CAR 186-89). The doctor reported the following history:

> The chief complaints are: pain in lower back, knee, and right shoulder; sleeping problems; and depression. The claimant reports that he got very depressed in 1998 when his girlfriend left him. Lately, his depression is caused by his health problems. He mentioned that he did labor work for a number of years, and due to this, he has been experiencing pain in his back, shoulder, and knees over the years. He has been taking pain medications with minimal improvement in his symptoms. Lately, the pain has been very severe, and it has been affecting his sleep. His doctor has given him Ambien, but this has not been helpful in promoting sleep. Also, he has been falling a lot, again due to severe pain in his back and knees. He now has to use a cane. He did discuss his depression with this medical doctor who informed him that he might possibly prescribe an antidepressant medication at his next visit. When his depression was explored, he acknowledged having poor sleep, mostly because of pain. He also mentioned having a decreased appetite and having no energy. Due to his health problems and depression, the claimant decided to apply for disability.

Plaintiff reported the following current level of functioning at the time of the examination:

> The claimant's daily activities include primarily: waking up around 3:00 a.m., taking a shower, eating breakfast, and watching television. The claimant is able to take care of personal hygiene. The claimant can take care of chores such as: sweeping, doing laundry, and taking care of his son. The claimant's hobbies include taking a walk around the block and watching television. The claimant is unable to utilize public transportation independently as it is difficult for him to stand for long periods or walk to the bus station. The claimant is able to drive. The claimant handles his own funds.

Dr. Castillo diagnosed depressive disorder, NOS, and assigned a global assessment functioning ("GAF") score of 70 on a 100-point scale. Dr. Castillo stated that plaintiff did well on assessment and that he was unable to identify any significant mental limitations.

    <u>March 18, 2006</u> – Plaintiff submitted to a comprehensive orthopedic examination performed by agency examining doctor Erik Roberson, M.D. (CAR 212-15). It was reported to Dr. Roberson that plaintiff spends his day "watching television and playing computer games and 'wandering around.'" On physical examination, the doctor noted that plaintiff was unable to

stand from the seated position without pushing off with his arms. Plaintiff's gait was unstable. He was only able to walk on his toes and heels with the use of a cane for balance. Plaintiff could not tandem walk. While Dr. Roberson noted some back spasm, he did not note tenderness or joint deformity. The doctor provided the following functional assessment:

> Given the objective findings from today's examination, the claimant could be expected to stand for two hours in an eight-hour day and sit for six hours. He requires a cane for long-distance ambulation. He can lift or carry 10 pounds frequently and occasionally. He should not frequently crouch, kneel, or crawl. There are no manipulative or environmental limitations.

March 29, 2006 – Agency consultative physician Dr. Bianchi submitted a physical residual functional capacity assessment. (CAR 190-97). Dr. Bianchi opined that plaintiff could lift 20 pounds occasionally and 10 pounds frequently; he could sit/stand/walk for six hours in an eight-hour day; could push/pull without limitation; and could occasionally perform postural activities. The doctor did not note any manipulative, visual, communicative, or environmental limitations.

May 17, 2006 – The record contains reports of various x-rays taken incident to plaintiff's complaints of back and neck pain. (CAR 257). Views of plaintiff's lumbar spine revealed no fractures or significantly narrowed disc spaces. Posterior elements and facet joints were seen intact. The conclusion for the lumbar spine was mild diffuse lumbar spondylolysis with no other abnormalities. As to the thoracic spine, alignment was normal and no fractures were seen. The posterior elements were intact. The final impression was mild multilevel degenerative disc changes with no other abnormalities. X-rays of the cervical spine were negative.

October 18, 2007 – Psychiatrist Les Kalman, M.D., submitted a report following his psychiatric evaluation of plaintiff. (CAR 260-67). On mental status examination, Dr. Kalman observed that plaintiff was alert and oriented to person, place, date, and situation. He did note, however, that plaintiff's memory was impaired and that plaintiff could not add,

subtract, or multiply.  Dr. Kalman completed a medical source statement in which he opined that plaintiff was mildly limited in the following areas: (1) ability to remember locations and work-like procedures; (2) ability to understand and remember very short and simple repetitive instructions or tasks; (3) ability to carry out short simple instructions; (4) ability to maintain attention and concentration for extended periods of time; (5) ability to make simple-work related decisions; (6) ability to ask simple questions or request assistance from supervisors; (7) ability to get along with co-workers; (8) ability to respond appropriately to expected and/or unexpected changes in the work setting; (9) ability to travel in unfamiliar places; and (10) ability to set realistic goals.  The doctor opined that plaintiff was moderately limited in the following areas: (1) ability to accept instructions and respond appropriate to criticism from supervisors; (2) ability to carry out detailed instructions; and (3) ability to understand and remember detailed instructions.  Dr. Kalman did not find that plaintiff was markedly limited in any area.  Dr. Kalman stated that plaintiff was not the type of individual for whom a routine, repetitive, simple, entry-level job would serve as a stressor which would exacerbate psychological symptoms.

<u>May 21, 2006</u> – Agency consultative psychologist Helen C. Patterson, Ph.D., submitted a psychiatric review technique form and mental capacity assessment.  (CAR 199-211).  She concluded that plaintiff's mental impairment was not severe.  She noted that plaintiff's only diagnosed mental impairment is depressive disorder, NOS.  Dr. Patterson stated that plaintiff had mild restrictions on activities of daily living, social functioning, and ability to maintain concentration, persistence, and pace.  She did not note any documented episodes of decompensation.  Dr. Patterson stated that she thought plaintiff's depression was a non-severe impairment because plaintiff has "no treatment history and current psychiatric exam indicating normal mental status and no objective evidence of impairment. . . ."

/ / /

/ / /

/ / /

1               <u>November 18, 2006</u> – Plaintiff's sister, Karen Lee, submitted a third-party statement. (CAR 136-43). Ms. Lee stated that plaintiff lives with his mother and plaintiff's three-year-old son. She stated that he wakes at 5:00 a.m., takes a shower, eats breakfast, and then sits in the living room to watch television. She added that, on occasion, he will take a walk for exercise. While Ms. Inthavong stated that plaintiff took care of his son, Ms. Lee stated that plaintiff does not. She stated that plaintiff has difficulty putting on his pants and that he falls down easily "due to legs feel like so weak." She added that plaintiff is able to dust the dining room table and wash dishes if he's feeling particularly well. Ms. Lee stated that plaintiff cannot pay his own bills, handle a savings account, or use a checkbook, but that he can count change. She stated that plaintiff's impairments affect his ability in the following areas: (1) lifting; (2) squatting; (3) bending; (4) standing; (5) reaching; (6) walking; (7) sitting; (8) kneeling; (9) memory; (10) completing tasks; (11) concentration; (12) understanding; (13) following instructions. and (14) getting along with others. She stated that plaintiff requires the use of a cane.

### III. STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See <u>Saelee v. Chater</u>, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See <u>Howard v. Heckler</u>, 782 F.2d 1484, 1487 (9th Cir. 1986); <u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See <u>Hammock v.</u>

Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

## IV. DISCUSSION

In his motion for summary judgment, plaintiff argues: (1) the ALJ erred by failing to consider third-party statements from plaintiff's family members; (2) the ALJ erred by failing to explain the weight given to the various medical opinions; (3) the ALJ's residual functional capacity assessment fails to incorporate limitations assessed by Dr. Robertson; and (4) the ALJ failed to include plaintiff's illiteracy in hypothetical questions posed to the vocational expert.

### A. **Evaluation of the Medical Opinions**

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional. See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). The least weight is given to the opinion of a non-examining professional. See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

/ / /

/ / /

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether: (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record. See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence. See Lester, 81 F.3d at 830. This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding. See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989). Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional. See Lester, 81 F.3d at 830-31. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. See id. at 831. In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings. See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

Plaintiff raises two arguments concerning the ALJ's analysis of the medical opinions. First, plaintiff argues that the ALJ "commented on some of the medical opinion evidence but failed to assign weight to any opinion." Second, plaintiff argues that the ALJ misstated Dr. Roberson's opinions and erred in rejecting Dr. Roberson's opinions regarding plaintiff's ability to sit/stand/walk.

///

Plaintiff's first argument – that the ALJ failed to indicate the weight given to particular medical opinions – is belied by a careful reading of the hearing decision. Referencing Dr. Roberson's March 18, 2006, report at Exhibit 5F, the ALJ summarized the doctor's opinion as follows:

> A consultative examination that occurred on March 18, 2006, also supports [the conclusion that the evidence shows at most mild degenerative changes in the spine]. Following physical examination, and accepting the claimant's reported symptoms and presuming the claimant requires a cane for long distance ambulation, the examiner concluded that the claimant could perform light work, standing . . . only 2 hours during an eight-hour day, with postural limitations of occasionally performing work that required him to crouch, kneel, or crawl. There were no manipulative or environmental limitations recommended [Exhibit 5F].[1]

The ALJ then discussed the weight given specific aspects of Dr. Roberson's opinion:

> . . . The undersigned accepts that with some level of back and knee pain the claimant may have postural limitations, but the medical evidence does not support a conclusion that the claimant cannot stand or walk for only two hours per day. . . . As discussed above, there is no medical evidence of any knee or back impairment so severe he cannot sit, stand, or walk at least six hours during an eight-hour day.

Thus, contrary to plaintiff's contention, the ALJ assigned a weight to Dr. Roberson's opinion by rejecting a 2-hour standing limitation and accepting a six-hour sitting limitation.

The ALJ also specifically discussed Dr. Bianchi's March 29, 2006, assessment at Exhibit 3F:

> A residual functional capacity assessment form completed by the state agency reviewing the claim found that the claimant could perform work at a light exertional level, with postural limitations of occasionally climbing, balancing, stooping/bending, kneeling, crouching, or crawling because of back and knee pain, with no other limitations. There are only minimal findings in the medical record that point to sources of pain [Exhibit 3F].

In finding that plaintiff could perform light work with a limitation to only occasional climbing,

---

[1] The ALJ stated that Dr. Roberson also opined that plaintiff could not walk for more than two hours in an eight-hour day. In fact, Dr. Roberson expressed no opinion as to plaintiff's ability to walk other than to say that plaintiff would require a cane for long-distance ambulation.

11

balancing, stooping, bending, kneeling, crouching, or crawling, the ALJ necessarily accepted Dr Bianchi's opinion. Thus, as with Dr. Roberson, the ALJ discussed the doctor's opinion and indicated the weight given to the opinion.

The court next addresses plaintiff's argument that the ALJ erred by failing to credit Dr. Roberson's opinions concerning his ability to sit/stand/walk. Plaintiff contends: (1) "First, the ALJ failed to present specific and legitimate reasons to reject Dr. Roberson's assessed limitation that [plaintiff] could stand for two hours in an eight-hour workday"; and (2) "Second, in rejecting the limitation that Mr. Man could only stand or walk for two hours in an eight-hour workday, the ALJ again misrepresented Dr. Roberson's opinion, who found Mr. Man was limited to standing for two hours and sitting for six hours, but made no indication of the amount of time he could be expected to walk."

<u>Sitting</u> – Dr. Roberson opined that plaintiff could sit for six hours in an eight-hour day. The ALJ agreed with this conclusion. Thus, there appears to be no issue as to the ALJ's analysis of Dr. Roberson's sitting limitation.

<u>Walking/Standing</u> – As to walking and standing, the ALJ stated:

> . . .The undersigned accepts that with some level of back and knee pain the claimant may have postural limitations, but the medical evidence does not support a conclusion that the claimant cannot stand or walk for only two hours per day. As the claimant reports, he spends his day watching television and playing computer games and going for walks. The claimant reported that his back pain is made worse by sitting for more than a few minutes. Generally playing computer games and sitting are performed sitting down, so his testimony as to limiting pain is not credible. Also he reported to this examiner that he could only walk for about a quarter of a block, which is inconsistent with other evidence. As noted above, the claimant testified that because he does not drive, if he needs to go places he sometimes walks. As discussed above, there is no medical evidence of any knee or back impairment so severe he cannot sit, stand, or walk at least six hours during an eight-hour day.

Plaintiff is correct that the ALJ mischaracterized Dr. Roberson's opinion as to walking. Dr. Roberson did not indicate any limitations as to plaintiff's ability to walk other than to indicate

12

that plaintiff would require use of a cane for "long-distance ambulation." The ALJ concluded that plaintiff could walk for up to six hours in an eight-hour day. In support of this conclusion, the ALJ cited plaintiff's daily activities as well as the lack of medical evidence indicative of a more limiting impairment. Given that Dr. Roberson expressed no limitations as to walking, the court cannot say that the ALJ rejected the doctor's opinion in this regard. Thus, as with sitting, there is no issue as to the ALJ's analysis of Dr. Roberson's opinion concerning walking.

Dr. Roberson opined that plaintiff could stand for no more than two hours in an eight-hour day. The ALJ rejected this opinion as follows because it was inconsistent with plaintiff's daily activities and the medical record as a whole. The court finds that these are specific and legitimate reasons. In addition, the ALJ's conclusion that a two-hour limitation is inconsistent with the evidence as a whole is supported by the record. As the ALJ noted, Dr. Bianchi found no limitations as to standing. June 16, 2004, and May 17, 2006, x-rays showed no significant abnormalities. And , the ALJ also noted: "[Plaintiff's] treating doctors suggest working on diet and exercise programs, but otherwise do not suggest any course of treatment or therapy."

### B. Lay Witness Statements

In determining whether a claimant is disabled, an ALJ generally must consider lay witness testimony concerning a claimant's ability to work. See Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e). Indeed, "lay testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence . . . and therefore cannot be disregarded without comment." See Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996). Consequently, "[i]f the ALJ wishes to discount the testimony of lay witnesses, he must give reasons that are germane to each witness." Dodrill, 12 F.3d at 919.

/ / /

/ / /

The ALJ, however, need not discuss all evidence presented. See <u>Vincent on Behalf of Vincent v. Heckler</u>, 739 F.2d 1393, 1394-95 (9th Cir. 1984). Rather, he must explain why "significant probative evidence has been rejected." <u>Id.</u> (citing <u>Cotter v. Harris</u>, 642 F.2d 700, 706 (3d Cir.1981). Applying this standard, the court held that the ALJ properly ignored evidence which was neither significant nor probative. See <u>id.</u> at 1395. As to a letter from a treating psychiatrist, the court reasoned that, because the ALJ must explain why he rejected uncontroverted medical evidence, the ALJ did not err in ignoring the doctor's letter which was controverted by other medical evidence considered in the decision. See <u>id.</u> As to lay witness testimony concerning the plaintiff's mental functioning as a result of a second stroke, the court concluded that the evidence was properly ignored because it "conflicted with the available medical evidence" assessing the plaintiff's mental capacity. <u>Id.</u>

In <u>Stout v. Commissioner</u>, the Ninth Circuit recently considered an ALJ's silent disregard of lay witness testimony. See 454 F.3d 1050, 1053-54 (9th Cir. 2006). The lay witness had testified about the plaintiff's "inability to deal with the demands of work" due to alleged back pain and mental impairments. <u>Id.</u> The witnesses, who were former co-workers testified about the plaintiff's frustration with simple tasks and uncommon need for supervision. See <u>id.</u> Noting that the lay witness testimony in question was "consistent with medical evidence," the court in <u>Stout</u> concluded that the "ALJ was required to consider and comment upon the uncontradicted lay testimony, as it concerned how Stout's impairments impact his ability to work." <u>Id.</u> at 1053. The Commissioner conceded that the ALJ's silent disregard of the lay testimony contravened Ninth Circuit case law and the controlling regulations, and the Ninth Circuit rejected the Commissioner's request that the error be disregarded as harmless. See <u>id.</u> at 1054-55. The court concluded:

> Because the ALJ failed to provide any reasons for rejecting competent lay testimony, and because we conclude that error was not harmless, substantial evidence does not support the Commissioner's decision . . .

<u>Id.</u> at 1056-67.

1         From this case law, the court concludes that the rule for lay witness testimony depends on whether the testimony in question is controverted or consistent with the medical evidence. If it is controverted, then the ALJ does not err by ignoring it. See Vincent, 739 F.2d at 1395. If lay witness testimony is consistent with the medical evidence, then the ALJ must consider and comment upon it. See Stout, 454 F.3d at 1053. However, the Commissioner's regulations require the ALJ consider lay witness testimony in certain types of cases. See Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996); SSR 88-13. That ruling requires the ALJ to consider third-party lay witness evidence where the plaintiff alleges pain or other symptoms that are not shown by the medical evidence. See id. Thus, in cases where the plaintiff alleges impairments, such as chronic fatigue or pain (which by their very nature do not always produce clinical medical evidence), it is impossible for the court to conclude that lay witness evidence concerning the plaintiff's abilities is necessarily controverted such that it may be properly ignored. Therefore, in these types of cases, the ALJ is required by the regulations and case law to consider lay witness evidence.

Plaintiff argues:

> Here, Karen Lee, Mr. Man's sister, and Kayla Inthavong, Mr. Man's niece, filled out third party function reports (citations to CAR omitted). The ALJ failed to mention either in the decision, and there was no discussion of the contents. Failure to discuss the evidence is not harmless error, because if it is fully credited, the ALJ could have reached a different disability determination. Both Ms. Lee and Ms. Inthavong agreed that Mr. Man had difficulty with personal care such as dressing, showering, and using the toilet due to inability to stand very long (citations to CAR omitted). Ms. Lee estimated he could walk 50 meters before resting, while Ms. Inthavong estimated only a [few] minutes (citations to CAR omitted). Both agreed he had trouble concentrating, only being able to pay attention for a few minutes at a time (citations to CAR omitted). He needed help remembering medication, and would forget things on the stove and burn them (citations to CAR omitted).

The court finds that the lay witness evidence was properly ignored because it is controverted by the medical evidence outlined and discussed above. For example, in February 2006, Ms. Inthavong stated that plaintiff can only walk for about five minutes before requiring a rest break.

1 This is contradicted by Dr. Roberson's opinion that plaintiff could walk for long distances with
2 the assistance of a cane. It is also contradicted by Dr. Bianchi's conclusion that plaintiff could
3 walk for up to six hours in an eight-day. Similarly, Ms. Lee's November 2006 statement that
4 plaintiff's impairments affected his ability to reach is not supported by any doctor's opinion.

### C. **Hypothetical Questions**

Hypothetical questions posed to a vocational expert must set out all the substantial, supported limitations and restrictions of the particular claimant. See Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989). If a hypothetical does not reflect all the claimant's limitations, the expert's testimony as to jobs in the national economy the claimant can perform has no evidentiary value. See DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991). While the ALJ may pose to the expert a range of hypothetical questions based on alternate interpretations of the evidence, the hypothetical that ultimately serves as the basis for the ALJ's determination must be supported by substantial evidence in the record as a whole. See Embrey v. Bowen, 849 F.2d 418, 422-23 (9th Cir. 1988).

Plaintiff argues that the ALJ erred by not including any mention of his limited ability to communicate in English in hypothetical questions posed to the vocational expert. The court agrees with defendant that this argument is without merit. As defendants note:

> . . .[T]he issue of English literacy was explicitly addressed during the hearing (Tr. 23). After the initial set of hypothetical questions posed by the ALJ, Plaintiff's counsel asked the VE whether "any of [the three identified jobs would] be feasible for someone who couldn't speak English" (tr. 23). Out of the three jobs, the VE identified only cashier as one that would be precluded (Tr. 23). Notwithstanding that the question concerning an individual who <u>could not</u> speak English, rather than someone who only had a limited English literacy, the VE still opined that the other identified positions of assembler and semiconductor worker would nonetheless be feasible (Tr. 22, 23). . . .

Thus, even assuming that plaintiff is completely illiterate in the English language (as opposed to having a limited English literacy, as the ALJ found), the vocational expert concluded that plaintiff could still perform jobs that exist in significant numbers. In particular, two of the three

jobs identified by the vocational expert could be performed by someone with no understanding of English.

## V. CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis. Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Doc. 14) is denied;
2. Defendant's cross-motion for summary judgment (Doc. 17) is granted; and
3. The Clerk of the Court is directed to enter judgment and close this file.

DATED: March 26, 2010

*/s/ Craig M. Kellison*
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE